## State of Vermont v. Bruce Batchelder, Jr.

[683 A.2d 1002]

No. 96-125

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 5, 1996

Motion for Reargument Denied July 26, 1996

*Jeffrey L. Amestoy*, Attorney General, and *Susan R. Harritt*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Robert Appel*, Defender General, Montpelier, for Appellant Office of the Defender General.

**Johnson, J.** This interlocutory appeal brought by the Office of the Defender General raises an issue of first impression involving the trial court's authority to control discovery in a criminal case. After the State objected to defense counsel's plan to record a series of depositions on audiotape, the court ordered that the depositions be recorded by stenographic means. Although not a party to the case below, the Office of the Defender General intervened to appeal the order. As defendant is represented by a contract public defender, the Office of Defender General bears financial responsibility for discovery costs in this case and has a substantial interest in challenging the court's action. We conclude that the court lacked authority to require stenographic recording of the depositions, and accordingly, vacate the order.

The procedural posture of this case is rather unusual. Defendant does not join this appeal; although defense counsel originally noticed the taking of the depositions by tape recorder, defendant later filed a memorandum with the trial court stating that he "agree[d] entirely with the State's position pertaining to the inadequacy of tape recording deposition testimony." Defendant "reluctantly oppose[d]" the State's request for stenographic recording of the depositions only because the Office of the Defender General refused to authorize the expense. The court held a telephone hearing to review the matter, and during the hearing defense counsel apparently agreed with the state's attorney that problems caused by tape-recorded depositions often result in delays and confusion.[1] Defendant also filed a motion to strike the notice of appeal filed by the Office of the Defender General.

Unlike the typical criminal appeal, therefore, here the Office of the Defender General represents its own interests, not those of defend-

---

[1] The telephone hearing was held off-the-record, so we do not have a transcript of the proceedings.

ant. There is, in fact, no dispute between the parties (the State and defendant) as to the stenographic recording of the depositions. As both the State and defendant urge us to dismiss the appeal, we must first decide whether this issue is properly before us.

The State views this appeal as a petition for extraordinary relief pursuant to V.R.A.P. 21, and contends that the appeal should be dismissed because the Defender General did not first seek relief in superior court. See V.R.A.P. 21(b) (complaint seeking extraordinary relief must set forth "the reasons why there is no adequate remedy . . . by appeal or proceedings for extraordinary relief in the superior courts"); *In re Vermont Supreme Court Admin. Directive No.* 17, 154 Vt. 392, 397, 579 A.2d 1036, 1039 (1990) (noting that V.R.A.P. 21 specifically requires that petitioners demonstrate exhaustion of remedies in superior court). We agree that this appeal does not meet the requirements of V.R.A.P. 21. We have the authority, however, to waive the requirements of the rules in a particular case, see V.R.A.P. 2, and have been urged to do so here by the Defender General. The issue presented involves no factual dispute and is entirely separate from the merits of the prosecution. Dismissing the appeal and requiring the Defender General to file a petition in superior court would serve little purpose and further delay a final decision of this important issue. We therefore exercise our discretion under V.R.A.P. 2 to hear this appeal. See *State v. Saari*, 152 Vt. 510, 514-15, 568 A.2d 344, 347 (1989) (suspending requirements of V.R.A.P. 21 to hear State's appeal of criminal sentence "because of the importance of the issue and because no further facts are necessary in order to consider the merits of the issues raised"); cf. *Sanchez v. District Court*, 624 P.2d 1314, 1316-17 (Colo. 1981) (exercising original jurisdiction to review trial court's denial of motion to take tape-recorded depositions; denial might otherwise evade effective review and issue is important to administration of pretrial discovery in general); *State ex rel. Bennett v. Keadle*, 334 S.E.2d 643, 646 (W. Va. 1985) (exercising original jurisdiction to review trial court's order requiring stenographic transcription of deposition; appeal presents "purely legal issue in an area where the bench and bar are in need of guidelines and where relief on appeal would not provide a suitable remedy").

Turning to the merits, the Defender General relies on the plain language of V.R.Cr.P. 15 to argue that the court lacked authority to order that depositions be recorded by stenographic means. Prior to 1984, this issue was governed by V.R.C.P. 30(b)(4), which allows the recording of a deposition by nonstenographic means only upon

stipulation of the parties or by court order. Reporter's Notes, V.R.Cr.P. 15 (1984 Amendment). As amended, Rule 15 permits the routine recording of depositions by nonstenographic means, eliminating the need for court intervention or agreement of the parties. V.R.Cr.P. 15(d)(2) ("A deposition shall be recorded stenographically unless the notice of taking states that it is to be recorded by other than stenographic means."). The rule does anticipate that the court may play a role in working out the details of nonstenographic recording. V.R.Cr.P. 15(d)(4) ("Upon motion of a party or upon its own motion the court may impose such additional conditions upon the taking of a deposition as are necessary to assure that testimony to be recorded by nonstenographic means will be accurate and trustworthy and to protect the interests of the parties and the witnesses."); Reporter's Notes, V.R.Cr.P. 15 (1984 Amendment) ("likely that parties will use (d)(4) to establish the ground rules for a nonstenographic deposition particularly on issues of custody, transcription, objections and use at trial"). Nowhere, however, does the rule state that the court may order the party taking the deposition to record it stenographically. Rather, Rule 15(d)(3) permits "[a]ny party or witness . . . *at his own expense* [to] concurrently record a deposition by a method other than that being used by the party taking the deposition." (Emphasis added.)

The Defender General's position is further supported by the Reporter's Notes, which state that "depositions may be taken by nonstenographic means at the option of the party" and that "conditions may be imposed . . . only to ensure the accuracy and trustworthiness of a nonstenographic deposition." Reporter's Notes, V.R.Cr.P. 15 (1984 Amendment). The Notes also refer to a proposed amendment to Federal Rule of Civil Procedure 30(b)(4) as a basis for the amendment to Rule 15. *Id.* The proposed federal rule explicitly provided that a court could "require that the deposition be taken by stenographic means if it deem[ed] that method necessary to assure that the record of the testimony be accurate." Preliminary Draft of Proposed Amendments to the Federal Rules of Civil Procedure, 77 F.R.D. 613, 632 (1978). The current federal rule, as amended in 1993, permits a court to order that a deposition be recorded stenographically. Fed. R. Civ. P. 30(b)(2). As mentioned above, no analogous provision was incorporated into Rule 15.

■ Given the language of the rule and the notable absence of such a provision, we agree with the Defender General that the court did not have the authority to order that depositions in this case be

recorded stenographically. The rule as amended "is premised on a finding that nonstenographic recording has become sufficiently reliable to be used to create a record of a deposition." Reporter's Notes, V.R.Cr.P. 15 (1984 Amendment); see also *Sanchez*, 624 P.2d at 1319 ("Technological advances have made the tape recorder the functional equivalent of stenographic accuracy."). A witness or a party who is troubled by the use of audio or visual recording devices may seek a court order establishing additional conditions to ensure that an accurate record is produced, or may choose to concurrently record the proceedings stenographically. V.R.Cr.P. 15(d)(3) & (4); see *Alava v. Peninsula General Hospital*, 414 N.Y.S.2d 43, 43-44 (App. Div. 1979) (party concerned that audiotaping depositions would be inadequate was entitled to have, at its own expense, a stenographic transcription of deposition). The court may not, however, require the party taking the deposition to bear the expense of stenographic recording merely because another party or a witness questions the accuracy of nonstenographic recording methods. See *Roche v. Udell*, 588 N.Y.S.2d 76, 77, 80 (Sup. Ct. 1992) (New York law stating that deposition testimony "shall be recorded by stenographic or other means" gives party statutory right to employ nonstenographic recording method despite objections of witnesses).

The State contends that the court may use its authority to issue a protective order to require that depositions be recorded by stenographic means. Pursuant to V.R.Cr.P. 15(f)(3), the court, for good cause shown, "may make any protective order which justice requires to protect a party or deponent from emotional harm, unnecessary annoyance, embarrassment, oppression, invasion of privacy, or undue burden of expense or waste of time." A protective order may require that "the . deposition may be taken only on specified terms and conditions, including a designation of the time, place, and manner of taking the deposition." *Id.* Like any method of discovery, the taping of a deposition "is still subject to the limitations of an order of protection to prevent abuse." *Liebman & Charme v. Lanzoni*, 624 N.Y.S.2d 752, 753 (Civ. Ct. 1995). We agree with the State that Rule 15(f)(3) gives the court authority to bar audio or video recording of a deposition, but only if such an order is required to prevent abuse. See *State ex rel. Anderson v. Miller*, 882 P.2d 1109, 1111 (Or. 1994) (trial court has discretion to issue order denying videotaping of deposition, but only if order is justified by standards set forth in rule governing protective orders). The State's concern that "inaccurate tape recording of deposition testimony could result in repetitive deposition taking" is

insufficient to justify the court's action as a protective order. See *id.* at 1112 (court's discomfort with permitting videotaping of depositions as matter of course could not justify protective order barring videotaping; record contained no showing that order was issued to protect opposing party from annoyance, embarrassment, oppression, or undue burden or expense or to prevent intimidation or harassment). As we have already noted, the State may take other steps to ensure an accurate recording of a deposition.

Finally, the Defender General asks us to order that the Judiciary pay for the stenographic costs incurred in connection with those depositions that have already been taken pursuant to the trial court's order.[2] Defendant, however, chose to continue discovery rather than defer the taking of depositions in anticipation of this Court's ruling. Under these circumstances, we see no reason to order that the Judiciary bear the costs of stenographic recording.

*The court's order requiring that depositions be recorded by stenographic means is vacated.*

---

[2] Although the record in this case is sparse, we can infer that some depositions have yet to be taken. Apparently only ten of the twelve witnesses listed in the notice of deposition have been deposed.